**Bernard HOWARD, Petitioner,**

v.

**COLONIAL SCHOOL DISTRICT, Respondent.**

Superior Court of Delaware, New Castle County.

Submitted: Oct. 25, 1991.
Decided: March 6, 1992.

Samuel L. Guy, Wilmington, for petitioner.

David H. Williams, and Peter C. Campbell, of Morris, James, Hitchens & Williams, Wilmington, for respondent.

## OPINION

HERLIHY, Judge.

Bernard Howard [Howard] appeals a decision of the State Board of Education [State Board] which upheld Howard's expulsion by the Colonial Board of Education [Colonial Board]. The Colonial Board expelled Howard for the balance of the 1990–91 school year for selling drugs to an undercover police officer.

Howard raises several issues in his appeal but the primary issue is one of first impression in this State. That issue revolves around the fact that the drug sales were off school property. The question then is the right of the Colonial Board, or any school board for that matter, to discipline for criminal activities conducted off school grounds.

*I*

The facts of this case are undisputed. At all times at issue, Howard was 17 years old and a senior in the 1990–91 school year. On three separate occasions in June and July of 1990, Howard sold cocaine to an undercover State Police officer. None of the sales were on school property. It was not until December 18, 1990 that the State Police arrested Howard at William Penn High School. Approximately two to three weeks earlier, the police had contacted Deputy Principal Kenneth Falgowski and inquired whether the Colonial School District [District] had a student named Howard and mentioned that the drug unit was interested in him.

On December 20, 1990, Howard was notified of an indefinite suspension because of the pending investigation for distributing drugs. On January 2, 1991 District Superintendent David Campbell [Campbell] wrote Howard's mother saying the "indefinite" suspension was extended from January 4 to January 11, 1991. Campbell indicated the District wanted more time to investigate and was concerned for the safety and welfare of its students.

On January 11, 1991, Campbell wrote Howard's mother again indicating the Colonial Board intended to expel Howard because of the three sales of cocaine and a hearing would be held on January 23, 1991. Howard's suspension was continued to that date. Also on January 11, 1991, Howard, through the same counsel as represents him before this Court, filed an action in the Court of Chancery. As a result of that action, the Colonial Board agreed to provide homebound educational services (educational materials for use at home) and to provide a "preliminary" hearing (in effect,

a pre-expulsion hearing) which was held January 15, 1991. At the hearing, Howard, accompanied by counsel, made no statements. The District continued with its intention to expel.

A District hearing officer conducted the formal expulsion hearing on January 23 and 24, 1991. The State Police officer to whom Howard sold cocaine testified the sales were on June 28, July 5 and July 23, 1990. Howard did not dispute this testimony and the hearing officer recommended expulsion. On February 12, 1991, the Colonial Board voted to expel Howard. He appealed that decision to the State Board.

The State Board held a hearing but took no new evidence regarding the sales. In a decision dated March 21, 1991, the State Board upheld the Colonial Board's expulsion of Howard. It also determined that the Colonial Board had not acted arbitrarily or capriciously. In addition, the State Board rejected Howard's claim that his expulsion was racially motivated.

The Colonial District Code of Conduct in effect during the 1990–91 school year did not provide for expulsion for drug sales off school grounds or for non-school related activities. It also prescribed procedures which would be followed in the event of expulsion.

## II

Howard raises several claims why the State Board's affirmance of the Colonial Board's expulsion order should be reversed. He notes the delay in providing the necessary hearings and reiterates his claim that the Colonial Board's decision was racially motivated. However, his primary argument is focused on the claim that the Colonial Board lacked authority to expel him for off-school site, non-school activity drug sales. The argument raises an issue of first impression in this State.

## III

■ The State Board is governed by the Administrative Procedures Act. 29 *Del.C.*

§ 10161(11). Upon an appeal from the State Board, this Court determines whether there was substantial evidence to support that board's decision is free from legal error. 29 *Del.C.* § 10142(d); *State Tax Commission v. Wilmington Trust Co.*, Del.Supr., 266 A.2d 419, 421 (1968). Substantial evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and more than a scintilla but less than a preponderance. *Olney v. Cooch*, Del.Supr., 425 A.2d 610, 614 (1981).

## IV

### A

■ The State Board correctly noted that the District did not strictly adhere to the procedural time requirements under its Code of Conduct relating to expulsion. The Code of Conduct exists to provide appropriate due process when expulsion is contemplated. *See Rucker v. Colonial School District*, Del.Super., 517 A.2d 703 (1986). The State Board noted that its policies promulgated in 1988 required that home bound educational services be provided for suspensions lasting more than ten days. Howard's suspension lasted longer than that and the District was tardy in providing such services. It basically did so under pressure from the Court of Chancery.

■ Such educational services ameliorated to a degree the harm done in a lengthy suspension. This Court cannot find error in the State Board's wrist slapping of the District for its tardiness. The fact remains that Howard was ultimately expelled. This Court joins in the State Board's criticism of the District's tardiness in bringing Howard's suspension to a pre-expulsion hearing and the ultimate determination to expel. While stricter adherence to the procedural protections and time frames must be the rule, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the District's non-adherence in this case is insufficient to cause reversal of the expulsion order.[1]

---

**1.** The District's non-compliance to the due pro-    cess procedures and time frames in this case

Howard has never denied selling drugs to the undercover officer. The primary issue all along in this matter is the right to expel for non-school-related criminal activities. Other than the delay in providing Howard home-bound educational services, the delay in resolving the ultimate issue is not prejudicial to the point where the expulsion decision should be reversed.

Accordingly, the Court can find no error in the State Board's decision as it relates to the District's procedural handling of this case.

### B

■ The Court finds no error in the State Board's determination that Howard's expulsion was not racially motivated. Of the 278 expulsions in ten years, 33% were black students and 67% were white students matching the racial composition of the district. One hundred fifty of the total expulsions involved alcohol or drugs. The State Board opined that Howard would have been expelled regardless of race. Further, the record is clear that Howard did not deny the drug sales. Howard offers no substantiation to his broad allegation of racial motivation.

For these reasons, this Court cannot find that the State Board erred as a matter of law or fact. There is nothing in the record to substantiate the allegation that Howard's expulsion was racially motivated.

### C

■ The central issue of this case is the District's ability to expel Howard for off-campus, non-school activity drug sales. Howard argues there is no such authority. He points to the District Code of Conduct which does not spell out potential expulsion for such activities.

In contrast, the Colonial Board premises its expulsion of Howard upon (1) the statement in its Code of Conduct that it is not all inclusive and (2) certain broad statutory powers, namely:

In each reorganized school district there shall be a school board which shall have the authority to administer and to supervise the free public schools of the reorganized school district and which shall have the authority to determine policy and adopt rules and regulations for the general administration and supervision of the free public schools of the reorganized school district. Such administration, supervision and policy shall be conducted and formulated in accordance with Delaware law and the policies, rules and regulations of the [State Board].

14 *Del.C.* § 1043.

The school board of each reorganized school district, subject to this title and in accordance with the policies, rules and regulations of the [State Board], shall, in addition to other duties:

(1) Determine the educational policies of the reorganized school district and prescribe rules and regulations for the conduct and management of the schools;

14 *Del.C.* § 1049.

The Colonial Board determined that Howard posed, as even an off-campus drug dealer, a threat to the safety and welfare of other District students. The State Board upheld that determination.

■ It is clear that a school board in this State has authority to expel for drug *possession* in school. *Rucker*, 517 A.2d at 705. This Court in *Rucker* upheld the District's "tough" policy on the issue of drugs. *Id.* While the activity condemned in *Rucker* involved inschool drug abuse, this Court, in this case, cannot say that a tough policy against students who *deal* drugs off campus is unwarranted or arbitrary.

■ The local school authorities are in a better position than the courts to determine the impact on their students by the presence of a drug dealer among the stu-

---

should not be interpreted as a license to repeat such conduct in a future case. Under pressure from the Court of Chancery, the District also agreed to provide a pre-expulsion hearing. This

should have been done sooner, also. At all times, Howard was notified of the reasons for his proposed expulsion.

dent body. Those authorities are responsible for the health, safety and welfare of all of their students. Those authorities also are better able to judge the impact on their students of off-campus criminal activity. Merely because such activity occurred off-campus does not necessarily render the local board powerless to act. That power must be exercised reasonably and without an abuse of discretion. *See Pollnow v. Glennon*, S.D.N.Y., 594 F.Supp. 220, 222 n. 2 (1984), *aff'd sub nom.* 757 F.2d 496 (2nd Cir.1985) (granting summary judgment for defendants in civil rights suit against school officials for expulsion for an off-campus assault).

Selling drugs is a serious offense. If Howard were one year older, he would have been charged with three felonies. The extent of the drug problem in our society is tragically too well known. The legislature has recognized special evils involved in drug sales to minors. 16 *Del.C.* § 4761. It has also recognized the need to keep drugs away from schools and their surroundings. 16 *Del.C.* § 4767 (prohibiting possession within 1,000 feet of a school).

While the sales here were not to a minor nor in or within 1,000 feet of a school, this Court cannot say that the Colonial Board acted arbitrarily or capriciously in determining a potential harm to its students by the presence of a 17–year–old drug dealer among its students. *See also Caldwell v. Cannady*, N.D.Tex., 340 F.Supp. 835 (1972). The State Board's determination that in this case the Colonial Board's power to expel was correctly used is not erroneous.

It should be noted that this Court is not ruling that all off-campus, non-school activity conduct subjects a student to the threat of expulsion. A clearer Code of Conduct would help to delineate such conduct. However, this Court cannot find that the expulsion here was without authority or justification.

## V

Accordingly, the State Board of Education's affirmance of the Colonial Board of Education's expulsion of Bernard Howard is AFFIRMED.